UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RODERIC RUMBLEY                                                    PLAINTIFF

V.                                        CIVIL ACTION NO. 3:21-CV-209-KHJ-MTP

STATE FARM FIRE & CASUALTY
COMPANY                                                           DEFENDANT

ORDER

This matter is before the Court on Defendant State Farm Fire & Casualty

Company's Motion for Summary Judgment [37]. For the following reasons, the

Court grants in part and denies in part the motion.

I.      Facts and Procedural History

This case arises from Plaintiff Roderic Rumbley's home insurance contract

with Defendant State Farm Fire & Casualty Company ("State Farm"). On January

10, 2020, Rumbley's home suffered damage from a powerful hailstorm. Compl. [1] ¶

4.3. Rumbley filed an insurance claim, seeking repairs to his roof from storm

damage. *Id.* ¶ 4.4. The damage largely occurred on the sloped portions of Rumbley's

roof, visible from the ground level. Depo. of Rumbley [40-5] at 29.[1]

Rumbley's insurance policy states, in relevant part:

We [State Farm] will pay the cost to repair or replace with similar
construction and for the same use on the premises . . . the damaged part
of the property covered . . . .

When the dwelling covered under [this policy] is damaged by a Loss
Insured[,] we will pay for the increased cost to repair or rebuild the

_____

[1] The Court uses the page numbers assigned by CM/ECF.

physically damaged portion of the dwelling caused by the enforcement of building, zoning, or land use ordinance or law . . . .

[37-1] at 31, 44.

Before the hailstorm, the shingles originally used on the house—the "GAF Camelot II, Weathered Wood" ("Wood Shingles")—were discontinued. Depo. of Haynes [40-3] at 9. The GAF "Camelot II, Weathered Timber" ("Timber Shingles") replaced the Wood Shingles' design. *Id.* Both parties agree that these two shingle models are not identical in color and design. Reply [42] at 6; Memo in Opposition [41] at 9; *see also* Photos of shingles [40-15].[2]

A State Farm claims representative inspected the roof in March 2020 and estimated the cost of repairs to be $9,136.41. Memo in Support of Summ. J. [38] at 5; *see also generally* Estimate 1 [37-1]. This first estimate accounted only for individual damaged shingles and interior damage. [38] at 5. Two months later, Rumbley hired another contractor, Ben Haynes to provide an alternative estimate, appraising the damage and cost of repair for the entire roof to be $41,731.02. [41] at 3; Haynes First Estimate [40-7].

In June 2020, Rumbley informed State Farm that the City of Madison, where Rumbley resides, prohibited the replacement of shingles without replacing the "entire slope." [38] at 6; City Memo [37-6] ("[P]atched roofs are prohibited. If any roof shingles are replaced[,] the entire roof slope should be replaced, unless the patched sections can match the existing shingles to the satisfaction of the Director

---

[2] Roughly four years before the January 2020 storm, Rumbley's roof sustained wind damage on a flat section near the rear of his roof. [41] at 3. He replaced these Wood Shingles with Timber Shingles. *Id.*

of Environment and Design."). In response, State Farm generated a second estimate of repairs, calculating the replacement of the entire roof slopes with damaged shingles to be $28,951.52. [38] at 6. This estimate accounted for a roof roughly half covered with Wood Shingles and half covered with Timber Shingles. [41] at 4.

After receiving this second estimate, Rumbley hired two separate independent contractors to assess the cost of repairs—Gulf States Claim Services, LLC, and Posan & Company. *Id.;* [38] at 6–7. They estimated the costs of repair, absent interior damage, to be $90,144.54 and $83,543.58 respectively. Gulf States Estimate [40-10] at 3; Posan Estimate [40-9] at 3. In August 2020, Posan & Company sent a letter to State Farm on Rumbley's behalf, invoking Rumbley's right under the "appraisal clause" of his policy, Posan Letter [37-10], which allowed either State Farm or Rumbley to trigger a cooperative appraisal procedure when the parties "fail[ed] to agree on the amount of loss." [37-1] at 34. State Farm declined the cooperative appraisal process, stating, "The appraisal provision in the policy is to resolve differences in the price of the repairs . . . [not] to resolve disputes regarding covered damages." State Farm Letter [37-11] at 3. So, State Farm based Rumbley's insurance payment on its own second estimate, sending Rumbley $19,072.11. *See* [38] at 6.

Feeling aggrieved, Rumbley filed suit alleging State Farm breached the insurance contract by not covering the entire roof replacement and by refusing to engage in the appraisal process. [1] ¶ 5.3. Rumbley also seeks declaratory judgment

and alleges breach of duty of good faith and fair dealing, negligence, and vicarious liability. *Id.* ¶¶ 5.5–5.17. State Farm now moves for summary judgment. [37].

II.     Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the applicable substantive law, 'its resolution could affect the outcome of the action.'" *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). "An issue is 'genuine' if 'the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A party seeking to avoid summary judgment must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). This party must present more than "speculation, improbable inferences, or unsubstantiated assertions." *Jones*, 936 F.3d at 321 (quoting *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015)). In analyzing a motion for summary judgment, the Court does not "weigh the evidence and determine the truth of the matter," *Klocke v. Watson*, 936 F.3d 240, 246 (5th Cir. 2019) (quoting *Anderson,* 477 U.S. at 249), but only determines whether there is a genuine issue for trial when viewing the evidence in the light most favorable to the party opposing summary judgment. *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013).

III.   Analysis

State Farm moves for summary judgment, arguing that it complied with the plain language of the insurance policy by paying to replace the "damaged part" of the property with "similar construction" in accordance with the City of Madison's ordinances. *See* [38] at 7–14. State Farm also urges the Court to grant partial summary judgment on Rumbley's bad-faith claims. *Id.* at 14–17. Rumbley responds that a fact-issue exists as to whether the "damaged part" of the property is the whole roof based on whether the Timber Shingles were the same or similar construction as the Wood Shingles. [41] at 8–11. Rumbley further argues that his bad-faith claim survives summary judgment due to State Farm's breach and lack of arguable basis in refusing to participate in the appraisal process. *Id.* at 13–15.

A.  Breach of Contract

Under Mississippi law, liability for breach of contract attaches when a plaintiff shows (1) the existence of a valid and binding contract and (2) breach by the defendant. *Maness v. K&A Enters. of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018) (citation omitted). Neither party contests the existence of an insurance contract. Rather, they dispute whether State Farm breached the contract in refusing to replace the entire roof with Timber Shingles and in refusing to engage in the appraisal process. [1] ¶ 5.3; [38] at 16–17.

As recounted above, State Farm is obligated to "pay the cost to repair or replace with similar construction and for the same use on the premises . . . the damaged part of the property covered." [37-1] at 31. When plain and unambiguous,

courts construe insurance contracts as written. *State Farm Mut. Auto. Ins. Co. v. Scitzs*, 394 So. 2d 1371, 1372 (Miss. 1981). When there is ambiguity, insurance contracts are construed heavily in favor of the policyholder. *See Brewer v. Miss. Farm Bureau Cas. Ins. Co.*, 328 So. 3d 721, 723 (Miss. Ct. App. 2021) (citing *Mut. Ben. Health & Accident Ass'n v. Blaylock*, 143 So. 406, 407 (1932)). Here, the language at issue is "similar construction" and "damaged part of the property."

While interpreting a contract is a question of law, this dispute turns on questions of fact. *See Briggs v. State Farm Fire & Cas. Co.*, No. 3:14-CV-16-DPJ-FKB, 2015 WL 11120639, at *2 (S.D. Miss. May 27, 2015). As for "damaged part of the property" language,

> [a] plain reading of the provision does not require the replacement of the whole when it is factually shown that the whole can be satisfactorily repaired by replacement of a "part," so long as the building is returned to ["the same use on the premises"] as a result. The policy language obligates [State Farm] to pay the reasonable cost to repair or replace, but no more than the replacement cost of that "part of the building damaged."

*Id.* (quoting *Eledge v. Farmers Mut. Home Ins. Co.*, 571 N.W.2d 105, 112 (Neb. 1997)) (interpreting the same provision at issue here). Indeed, the "damaged portion" of the home could be either the broken shingles or the entire roof (or anything in between), depending on whether merely replacing individual shingles satisfactorily repairs the whole dwelling. This determination depends on facts, not contract interpretation.

Similarly, the parties do not offer competing interpretations of "similar construction." *See* [38] at 10 (shingles do not have to be identical only similar in

6

function, color, and shape (citing *Greene v. United Services Auto. Ass'n*, 936 A.2d 1178, 1186 (Pa. Super. 2007))); [41] at 8 (shingles must be of similar construction, presenting a reasonable uniform appearance (citing *Cantu v. State Farm Lloyds*, No. 7:13-cv-105, 2015 WL 12532732, at *4 (S.D. Tex. Aug. 7, 2015))). Rather, they contest whether the Timber Shingles are, in fact, of similar construction as the Wood Shingles. Rumbley provides ample evidence in the record to create a genuine issue of fact as to their similarity. *See, e.g.*, [40-3] at 29 (noting design difference); [40-15] (depicting an identifiable difference in color).

Even using State Farm's construction of the contract, the company has only provided sufficient evidence that it used shingles of similar "function" but not "color and shape." [40-5] at 28 (Rumbley admits Timber Shingles keep water out of the house). From the photos, the Timber Shingles and Wood Shingles are not identical, and there is plenty of room for a reasonable disagreement as to whether they are sufficiently similar. Whether "Weathered Timber" is similar enough to "Weathered Wood" is a question of fact for the jury.

Given that a reasonable jury could disagree on both sufficient similarity and the damaged portion, Rumbley has shown a genuine issue of material fact exists as to State Farm's inadequate performance. *See Collins v. Allstate Ins. Co.*, No. CIV.A.2:09CV01824WY, 2009 WL 4729901, at *5–6 (E.D. Pa. Dec. 10, 2009) (genuine issue exists where affidavit supports that repairing only damaged portions of the roof would result in a different roof appearance and would not place the

plaintiff back into the position they were in before the loss). The Court denies summary judgment as to the breach of contract claim.

B. Bad Faith Claim

In Mississippi, a plaintiff may pursue extracontractual punitive damages claims against an insurance provider for bad-faith refusal to pay. *See State Farm Fire & Cas. Co. v. Simpson*, 477 So. 2d 242, 250 (Miss. 1985). Bad-faith claims allow the award of punitive damages where an insurer has no arguable reason for failure to honor a claim and the failure does not result from a clerical error or honest mistake. *Weems v. Am. Sec. Ins. Co.*, 486 So. 2d 1222, 1227 (Miss. 1986) (citing *Simpson*, 477 So. 2d at 250).

To succeed on a bad-faith claim for extracontractual damages, Rumbley must first show a breach of contract. *See Blue Cross & Blue Shield, Inc. v. Maas*, 516 So. 2d 495, 496–97 (Miss. 1987). As stated above, a genuine dispute of fact exists on Rumbley's breach of contract claim. Yet this Court also stated that reasonable minds could differ as to whether the whole roof was the "damaged portion" or whether the Wood Shingles and Timber Shingles were of "similar construction." So State Farm had an arguable reason to refuse payment for whole-roof replacement. Because State Farm had a legitimate or arguable reason to only pay for the replacing individual shingles, this potential breach cannot support a bad-faith insurance claim. *See Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 293 (Miss. 1992).

Rumbley also argues that State Farm's refusal to engage in the appraisal process is a breach that supports bad-faith punitive damages. [41] at 14–15. State Farm responds that it did not breach the appraisal provision because Rumbley did not ask for an assessment of the interior damage and State Farm denied appraisal due to disputes of coverage not loss amount. [42] at 9–11.

"[U]nder Mississippi law, . . . the purpose of an appraisal is not to determine the cause of loss or coverage under an insurance policy; rather, it is 'limited to the function of determining the money value of the property' at issue." *Jefferson Davis Cnty Sch. Dist. v. RSUI Indem.*, No. 2:08-CV-190-KS-MTP, 2009 WL 367688, at *2 (S.D. Miss. Feb. 11, 2009) (quoting *Munn v. Nat'l Fire Ins. Co.*, 115 So. 2d 54, 55 (Miss. 1959)). Because appraisal does not adjudicate liability for monetary entitlements, failure to engage in a contractual appraisal process typically warrants only declaratory or injunctive relief. *See, e.g., Dwyer v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284, 288 (5th Cir. 2009); *Kuehn v. State Farm Fire & Cas. Co.*, No. 1:06-CV-723-LTS-RH, 2007 WL 184647, at *1 (S.D. Miss. Jan. 19, 2007). "The Mississippi Supreme Court . . . is extremely reluctant to allow [bad faith claims] in cases where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment." *Tutor v. Ranger Ins. Co.*, 804 F.2d 1395, 1399 (5th Cir. 1986) (citations omitted).

No matter if State Farm breached the contract in refusing the appraisal, such a breach would not support Rumbley's bad-faith denial claim. Mere refusal to engage in the appraisal process does not necessarily amount to denying a claim or

denying other rights amounting to an independent tort under *Simpson*. *See* 477 So. 2d at 250. Rumbley alleges no injury stemming solely from the failure to engage in the contractual appraisal process rather than the denial. Additionally, no evidence supports the refusal as evasive or in bad faith. State Farm did not categorically deny Rumbley's claim. State Farm sent a check to Rumbley for $19,072.11. [41] at 1–2. State Farm also appraised Rumbley's damages twice and denied the contractual appraisal process because it was an attempt to "resolve disputes regarding covered damages" and not "to resolve differences in the price of repairs." [37-11] at 3. Nothing in the Posan Letter requesting appraisal specifies Rumbley's dispute of the interior damage estimates. *See* [37-10]. When the bulk of the dispute was over replacing the whole roof, it is not unreasonable for State Farm to read the Posan Letter as raising disagreements about coverage under the guise of appraisal.

Rumbley cites no evidence creating a genuine dispute of fact as to his bad-faith denial. Because State Farm had an arguable basis to deny the claim and decline the appraisal process, the Court grants State Farm's request for summary judgment as to the bad-faith claims for punitive damages.

IV.   Conclusion

For reasons stated, the Court GRANTS IN PART and DENIES IN PART State Farm's Motion for Summary Judgment [37]. Plaintiff Rumbley's bad-faith insurance claims are DISMISSED with prejudice.

SO ORDERED AND ADJUDGED this the 28th day of April, 2022.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE